## LITTLE CAHABA COAL CO. et al. v. UNITED STATES.

District Court, N. D. Alabama, S. D. October 30, 1928.

Nos. 3153, 3154.

See, also, 15 F.(2d) 863; 24 F.(2d) 180.

William S. Pritchard and John D. Higgins, both of Birmingham, Ala., for plaintiffs.

C. B. Kennamer, U. S. Dist. Atty., and J. S. Franklin, Asst. U. S. Dist. Atty., both of Birmingham, Ala., A. W. Gregg, Solicitor of Internal Revenue, and Ralph E. Smith, Sp. Atty. for Internal Revenue Bureau, both of Washington D. C.

CLAYTON, District Judge. The above stated suits were brought under paragraph 20, section 24, of the Judicial Code as amended, Comp. St. Supp. 1925, c. 2, § 991(20a), 28 USCA § 41(20), and are for the recovery of income and profit taxes alleged to have been erroneously collected by the defendant from the plaintiff corporation for the tax year 1917. The taxes were assessed under the Revenue Act of that year (40 Stat. 300). John D. McNeel was the Collector of Internal Revenue who assessed and collected the taxes, and W. E. Snead at the time of the entry of the suits was his successor.

The cases were consolidated without objection and tried together. The stock ownership of each corporation and the law and the material facts in each are practically the same. After the amended complaints were filed the demurrers to the originals were withdrawn and the defendant pleaded in each case in short by consent the general issue. So that, as a matter of law arising from the pleadings, it is conceded that the suits are well brought, and the cause is now upon the merits.

The defendant filed objections to some of the testimony offered by the plaintiff, and the plaintiff filed a motion to strike the objections. In the consideration of the cause, arriving at a finding of fact and reaching a final decision, and rendering a final judgment, I have considered only the legal relevant and material evidence offered on the trial of the cause. The findings of fact are fully supported by evidence offered on the trial of the cause by the defendant, and evidence offered by the plaintiff to which no objections were interposed.

The questions are: (1) The amount at which the plaintiffs should be allowed to capitalize their three separate mining slopes; (2) the cost price at which they should be allowed to capitalize their tenant houses; and (3) whether plaintiffs' exemption rate should be 9 per cent., the maximum allowed by the statute, or 7 per cent., the minimum.

This case was considered by the Circuit Court of Appeals for the Fifth Circuit, in the case of Blockton Cahaba Coal Co. et al. v. United States, 24 F.(2d) 180; and it was there held in reference to the first question presented, that: "Money laid out in the construction of a coal mine to a greater depth is invested capital, just as much as is money spent to add a second story to a building that already is rented at a profit."

Plaintiffs laid out in money in constructing their said three mine slopes, to the depth they had each reached at the beginning of the year 1917, $439,867.65 as set forth in detail in the findings of fact filed in this case. This value I have allowed to plaintiffs both for invested capital and depreciation or depletion purposes.

The defendant contends that the plaintiff should be allowed to capitalize their three mine slopes only to the point where the re-

spective mines passed out of the development stage. This calls for the determination of a physical fact, evidenced in part by the extent of the development of the underground workings of the mines, the available coal to be mined, the outside plant and equipment of the mines for the purpose of handling, cleaning, sizing, and loading the coal after it is brought to the surface, the capacity which the mine is designed to produce, and the number of tons of coal actually produced over a given period. It is my opinion from all the evidence in this case that neither of the three mines slopes in question passed out of the development stage, until after March 1, 1913. Wherefore, if defendant's contentions in this regard were to be sustained, the plaintiffs would be entitled to capitalize for invested capital and depreciation or depletion purposes the cost of each of the said three mine slopes to the depth that they had each respectively reached on March 1, 1913, as set forth in the findings of fact filed herein.

In reference to the second question presented, the Circuit Court of Appeals in this case, supra, stated: "If it be true, as contended by plaintiffs, that the books kept by them only disclosed the cost of the planed lumber and hardware which they bought from others, but did not disclose the cost or value of the rough lumber which they furnished and manufactured, then the court should consider the value of such houses as a whole and not merely that part of the value shown by the books in arriving at the amount of invested capital."

The fact that the house account as shown on plaintiffs' original ledger does not reflect the total cost of the tenant houses in question is admitted by the defendant and is clearly shown by the books themselves. These houses were built to house plaintiffs' labor and are absolutely essential to the operation of their coal mines. They were built prior to the World War and the advent of the income tax laws. Plaintiffs are private corporations whose stock is closely held; it being held largely by the members of a single family. At the time the houses were constructed all of the outside purchases of material, such as hardware and planed lumber that went into the construction of the houses, were capitalized on plaintiffs' books. The cost of the labor used in the construction of such houses, and the cost of the rough lumber which they cut from their lands and manufactured in their own saw mills, was charged from the pay rolls direct to expense, and these major costs were never capitalized, nor in any way reflected in plaintiffs' book figures. The de-

fendant allowed the plaintiff the value which it contended for, of the said tenant houses, namely, $283,640.88, in computing one element of plaintiffs' taxes, namely, depreciation, but declined to allow the same value to plaintiffs in computing the other element of its taxes for the said year, namely, invested capital. Defendant stated that this action was taken for the reason that the defendant was convinced that the figure named constituted the fair and reasonable market value of the houses in question on March 1, 1913, but that defendant was not convinced that the said figure represented the actual cost of the said houses. From all of the evidence in the case, I am convinced that the houses in question actually cost plaintiff, at a minimum, $283,-640.88. Wherefore, I allow this value of the said tenant houses constituting the total actual cost of the said tenant houses to the plaintiff in computing plaintiffs' invested capital as well as in computing its depreciation for the tax year in question.

The third question, namely, plaintiffs' exemption rate in computing its excess profits taxes for the year 1917, is to be determined by the provisions of section 203 of the Revenue Act of 1917 (40 Stat. 304), which provides in part as follows: "In the case of a domestic corporation; the sum of (1) an amount equal to the same percentage of the invested capital for the taxable year which the average amount of the annual net income of the trade or business during the prewar period was of the invested capital for the prewar period (but not less than seven or more than nine per centum of the invested capital for the taxable year)."

Upon application of the provisions of the quoted statute to the facts herein, it is my opinion that the first two separate computations made by the defendant in which plaintiffs' exemption rate was fixed at 9 per centum were correct, and that plaintiff is entitled to a 9 per centum exemption rate in computing its excess profits taxes for the year in question. In fact this rate and the basis therefor was worked out in detail and furnished to the plaintiffs by the defendant, first, by its field auditors after a field audit and investigation of taxpayers' books, records, business, and affairs, which audit and report were duly in evidence; again, the same rate was fixed by auditors and experts in the office of the Commissioner of Internal Revenue, at Washington, D. C., and furnished to the plaintiff by the Commissioner upon the occasion of the Commissioner's reaudit of the field auditors' report. It was as a result of these two audits that the additional tax here in contro-

versy was set up by defendant against the plaintiffs. The defendant again made an audit after plaintiffs had filed their claims for refund herein, in which they again advised the plaintiffs that their correct exemption rate for excess profits taxes was 9 per cent. In fact this rate was never questioned, or sought to be varied from, until the claims for refund herein were finally rejected. Under all the evidence as to pre-war invested capital and earnings, there can be no doubt that 9% is plaintiffs' correct exemption rate in the computation of its excess profits taxes for the year 1917.

Judgment will be entered in harmony with this opinion.